# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

JOSEPH WHITE, )
)
    Plaintiff, )
)
v. ) No. 3:09-cv-01059
) JUDGE HAYNES
INTERSTATE DISTRIBUTOR )
COMPANY, )
)
    Defendant. )
)

## MEMORANDUM

Plaintiff, Joseph White, filed this action under the Americans with Disabilities Act ("ADA"), 42 USC § 12101 et seq., as amended and the Tennessee Handicap Act, ("THA") Tenn. Code §8-50-103 et seq., against the Defendant, Interstate Distributor Company, his former employer. Plaintiff also asserts a state common law claim for negligent infliction of emotional distress. Plaintiff's specific claims are that the Defendant fired him due to his disability and did not make a good faith attempt to accommodate his disability. Plaintiff seeks compensatory damages, punitive damages and attorney's fees and costs.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 27), contending, in sum: (1) that Plaintiff is not disabled as defined by the ADA; (2) that the Defendant was not required to accommodate Plaintiff by assigning him to a temporary duty position or a new permanent position; (3) that the interactive process between the parties was sufficient under ADA precedents; and (4) that the Tennessee Workers Compensation Act bars Plaintiff's common law claim for negligent infliction of emotional distress.

In response, Plaintiff contends that his injuries constitute a disability under the ADA and that the Defendant failed to engage in an appropriate interactive process with him to find a reasonable accommodation for Plaintiff nor did the Defendant did not honor his request for a potential accommodation. (Docket Entry No. 35).

For the reasons set forth below, the Court concludes that the Plaintiff does not have a disability under the ADA or THA. In addition, the Court concludes that Plaintiff failed to request a reasonable accommodation and Defendant afforded Plaintiff a sufficient interactive process under the ADA for a potential accommodation. Finally, Plaintiff's negligent infliction of emotional distress claim is barred as matter of Tennessee law and in fact, Plaintiff abandoned that claim in this action. Accordingly, Defendant's motion for summary judgment should be granted on all claims.

### A. Findings of Fact[1]

On July 1, 2008, Defendant hired Plaintiff as a maintenance truck/trailer tech I at its Mt. Juliet, Tennessee location. (Docket Entry No. 41 at ¶ 2). As a tech I, Plaintiff engaged in heavy truck repair, including repair tasks and maintenance on all parts of a truck. Id. at ¶ 3. A tech I's duties also included working on tires, lifting objects between 1-80 pounds and lifting above 40 pounds approximately 1/3 of the work shift. Id. at ¶ 26-27. The ability to lift such weights is required because the tech employee performs brake and starter repair, tire work and other work with engine parts that weigh more than 20 pounds. Id. at ¶ 28.

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the lightmost favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict. Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Under the applicable law, the Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

On July 26, 2009, a Sunday, Plaintiff was injured when a motorcycle fell on his leg, fracturing it. Id. at ¶ 5. Plaintiff called his immediate supervisor, Tim Hartley and Hartley's supervisor, Tim Bernard, to inform them that he would be unable to work on the Monday after his accident. Id. at ¶¶ 4, 6. Plaintiff also spoke with Mary Johnston, Defendant's human resource officer in the State of Washington, to request FMLA leave. Id. at ¶ 7. Following that conversation, Plaintiff took FMLA leave. Id. at ¶ 8.

On September 18, 2009, Plaintiff received the following correspondence from Johnston:

> Our records indicate that you have been off on leave since July 27, 2009 and your leave available ends on October 16, 2009. At this time we would like to begin our interactive process to determine the status of your return to work and to explore any reasonable accommodations that Interstate can make to assist you.
>
> Please take a moment to update us in writing as to the status of your return to work or a request to consider a reasonable accommodation.
>
> You may also respond to this letter by calling Mary Johnston in Human Resources at ext 4392 or Laila Reynolds at ext 4432.

Id. at ¶ 9. After receiving this letter, Plaintiff contacted Johnston who informed him that his FMLA leave expired on October 16, 2009. Id. at ¶¶ 10, 11. Plaintiff informed Johnston of his doctor's appointment near that date and asked if he could return to work after the appointment. Id. at ¶ 12. Johnson granted this request. Id. at ¶ 13.

After an examination, Dr. Cook, Plaintiff's doctor, gave Plaintiff temporary work restrictions for 1 to 2 months, namely: (1) not lifting over 20 pounds, not lifting any weight for 67-100% of the time; and (2) not climbing, nor doing any tire or transmission work while these lifting restrictions were in effect. Id. at ¶¶ 15-19.

3

Plaintiff returned to work on October 20, 2009 and gave Dr. Cook's restrictions to Bernard. Id. at ¶ 20. Plaintiff did not mention any other physical restrictions. Id. at ¶ 21. When Plaintiff informed Bernard that he would return to his shift, Bernard told Plaintiff to discuss his return first with Johnston. Id. at ¶ 22. Johnston called Bernard to discuss Plaintiff's restrictions and inquired if any available positions existed that the Plaintiff could perform with his restrictions. Id. at ¶ 24-25. Bernard responded that there were not any positions available for Plaintiff with those restrictions. Id. at ¶ 31. Plaintiff concedes that he could not perform his duties as a tech I. Id. at ¶ 30.

On October 21, 2009, Johnston informed Plaintiff that IDC could not reinstate him to his tech position. Id. at ¶ 32. Plaintiff told Johnston that he thought he would be able to decommission trucks. Id. at ¶ 33. Decommissioning trucks was the only job function that Plaintiff mentioned to Johnston during this conversation. Id. at ¶ 34. Decommissioning trucks is a temporary work for Defendant's mechanics, (Docket Entry No. 28 at p. 17, quoting Pl. Dep. p. 57, 68), and involves "a set of tasks that the techs perform" when a truck is being prepared for sale, such as removing decals and positioning equipment. (Docket No. 31, Bernard Decl. at ¶ 8). Yet, when decommissioning a truck, the techs also perform many job tasks similar to those performed by a tech I. (Docket No. 41 at ¶ 37). Plaintiff did not propose any other accommodations that would allow him to perform his tech duties, given his cited medical restrictions. (Docket No. 29 at ¶ 35).

After that conversation, Johnston wrote Plaintiff a letter, stating in relevant part that:

> This letter is a follow up to our telephone conversation this date. The purpose of the call was to engage you in an interactive process to determine when you would be able to return to work, if you needed any accommodations, and how Interstate Dist. Co. could help.

4

> You provided a return to work release indicating you could return to duty 10/2009 with the following restrictions: 20lb. lifting restriction; no tire or transmission work until lifting restriction is removed in 1 to 2 months. I discussed these restrictions with Tim Bernard to determine if they were restrictions that could be accommodated. At this time, there is no work available that would allow you to return to duty and still meet these restrictions. Because your available leave time has expired and you are not able to return to work, your employment with Interstate Distributor Co. is being separated as of October 21, 2009.

(Docket No. 41 at ¶ 41).

## B. Conclusions of Law

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of

the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A

6

court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added). It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

7

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative

evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Plaintiff's ADA Claims[2]

Plaintiff's first ADA claim is that the Defendant failed to satisfy the ADA's requirements for an interactive process that Plaintiff defines as the lack of an in-person "good-faith meeting." (Docket Entry No. 35 at p. 10). ADA's actual requirement is that "to determine the appropriate reasonable accommodation for a given employee, it may be necessary for the employer to initiate

---

[2] A claim under the Tennessee Handicap Act is analyzed under the same principles as claims under the ADA, Sasser v. Quebecor Printing Corp., 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004), except that the TDA does not include a reasonable accommodation requirement. Tenn. Code. Ann. § 8-50-103. Federal and Tennessee courts interpreting the TDA does not require the employer "to provide disabled workers with reasonable accommodations." Adams v. TRW Automotive, US LLC, 2005 WL 1862302, at *19 (M.D. Tenn. 2005); Workman v. Frito-Lay, Inc. 165 F.3d 460, 466 (Tenn. Ct. App. 1992).

an informal, interactive process with the employee." Kleiber v. Honda of America Mfg., Inc., 485 F.3d 862, 871 (6th Cir. 2007) (citing 29 C.F.R. §1630.2(o)(3)). Such an informal interactive process does not require a face to face meeting of the employer and affected employee. Wilkerson v. Shinseki, 606 F.3d 1256, 1266 (10th Cir. 2010) ("although there was not a face-to-face meeting between the parties to discuss accommodations, [Plaintiff] requested an accommodation that the [Defendant] considered and denied. Based on the circumstances in this case, it was reasonable for the [Defendant] to conclude that any further interactive process would be futile"); Connolly v. Entex Information Services Inc., 27 Fed. Appx. 876, 878 (9th Cir. 2001) ("although…management did not meet with him in person weekly as he requested, they did e-mail with him and speak with him regularly on the phone and meet with him several times, during which a discussion of reasonable accommodations occurred").

Here, Johnston spoke with Plaintiff and Bernard about Plaintiff's restrictions and any possible accommodations that Defendant could make for the Plaintiff in light of Plaintiff's medical restrictions. The Court concludes that this process was a sufficient interactive process under the ADA.

As to Plaintiff's claim of failure to provide a reasonable accommodation under the ADA, Plaintiff admits that he was unable to perform his assigned tech duties with his medical restrictions. (Docket Entry No. 28 at p. 13-14 quoting Pl. Dep. at p. 63). Plaintiff cites assignment to decommission trucks as an accommodation for his alleged disability, but those job functions were the only potential accommodation that Plaintiff discussed with Johnston. The process of decommissioning a truck was performed by the mechanics on an ad-hoc basis, and was not a permanent position. Plaintiff argues that decommissioning trucks would be full time

work, but Plaintiff also acknowledges that decommissioning was a "temporary thing he did" as one of the mechanics. (Docket Entry No. 28 at p. 17).

Under Sixth Circuit's ADA precedents, the Defendant was not required to convert these decommissioning duties into a permanent position:

> In cases like this, where the plaintiff claims that [they] should have been accommodated by reassignment to another position, identifying the necessary accommodation requires the plaintiff to identify the position to which [plaintiff] should have been reassigned. Therefore, as part of [plaintiff's] prima facie case, the *plaintiff must identify a vacant, funded position* for which [plaintiff] was qualified, with or without accommodation, that existed at the time of [their] request for reassignment.

Willard v. Potter, 264 Fed. Appx. 485, 487-488 (6th Cir. 2008) (emphasis added).

The ADA does not require an employer to create a new full-time position to accommodate a disabled employee. Hoskins v. Oakland County Sherriff's Department, 227 F.3d 719, 729 (6th Cir. 2000). Additionally, an employer is not required to convert a temporary position into a permanent position to accommodate a disabled employee. Id. at 730; see also Cobb v. Jones Apparel Group Inc., 23 Fed. Appx. 480, 481 (6th Cir. 2001). An employer is not under any "obligation to create a permanent light duty post when none previously existed." Chase Brass & Copper Co. Inc., 14 Fed. Appx. 482, 488 (6th Cir. 2001) (citing Martin v. Kansas, 190 F.3d 1120, 1133 (10th Cir. 1999)).

Plaintiff next argues that he could work decommissioning trucks or in the parts department with assistance from others to lift heavy objects (Docket No. 35 at pp. 7-8), but "employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability." Bratten v. SSI Services Inc., 185 F.3d 625, 632-33 (6th Cir. 1999). Plaintiff has the burden to request a particular accommodation. Lockard v. General Motors

11

Corp., 52 Fed. Appx. 782, 786 (6th Cir. 2002) ("a plaintiff must establish, as part of her prima facie case of discrimination under the ADA, that she requested and was denied reassignment to a position for which she was otherwise qualified."). Plaintiff's only discussion with Johnston about a potential accommodation was decommissioning trucks, a non-existent position. (Docket No. 35 at pp. 5-6).

Plaintiff's inability to identify a reasonable accommodation within an existing job defeats his ADA claim:

> "The Court earlier concluded that [Plaintiff] failed to establish there was a vacancy for which he was qualified by which to accommodate his disability. Therefore, even if [Defendant] did not engage in a good faith interactive process, appellant cannot prevail on this point because [Plaintiff] would be unable to establish that he could have been accommodated but for [Defendant's] failure to engage in the interactive process.

Trout v. Aerospace Testing Alliance, 303 Fed. Appx. 272, 274 fn.1 (6th Cir. 2008).[3]

For these reasons, the Court concludes that the Defendant's motion for summary judgment should be granted on Plaintiff's ADA claims.

### 2. Plaintiff's THA Claim

As noted earlier, supra at p. 9 n.2, Tennessee courts apply ADA precedents to THA claims. Congress amended the ADA in 2008 with the American with Disabilities Amendment Act ("ADAA"), to broaden the definition of disability. Pub.L. 110-325, 122 Stat. 3553 effective January 1, 2009. The Equal Employment Opportunity Commission ("EEOC") adopted regulations to reflect those amendments, as pertinent here:

---

[3] This also serves to defeat Plaintiff's claim that Ms. Johnston's sworn testimony that she had a conversation with Mr. Bernard to discuss the Plaintiff's restrictions should not be accepted by the court at summary judgment because whether such a conversation took place is a matter of witness credibility that should be reserved for the jury. (Docket No. 41 at ¶24-25). Even if this were true, any such flaws in the interactive process would be immaterial due to the Plaintiff's failure "to establish there was a vacancy for which he was qualified by which to accommodate his disability."

(g) Disability means, with respect to an individual--

(1) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(2) A record of such an impairment; or

(3) Being regarded as having such an impairment.

(See § 1630.3 for exceptions to this definition).

(h) Physical or mental impairment means:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(i) Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(j) Substantially limits--

(1) The term substantially limits means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

(2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

(3) With respect to the major life activity of working--

(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

(ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

29 C.F.R. § 1630.2(g) and (h)(1)(2) and (3).

Under Section 12102(2)(A) of ADA, the determination of whether a plaintiff has an impairment that substantially limits one or more of that individual's major life activities, is a three- step process involving questions of law for the Court. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, the Court must decide whether the plaintiff has an impairment. Id. Second, the life activity upon which the plaintiff relies must be identified, and then the Court must determine whether that life activity constitutes a major life activity under the ADA. Id. Third, the Court must tie the two statutory phrases together asking "whether the impairment substantially limited the major life activity." Id.

The Sixth Circuit explained, "the impairment must significantly restrict the claimant=s ability to perform either a class of jobs or a broad range of jobs in certain classes. . . .An impairment that prevents a claimant from a narrow range of jobs will not qualify as a substantially limiting impairment under the ADA." Hall v. Shelby County Govt., 1997 WL 468328, at *2 (6th Cir. 1996) (affirming the district court's grant of summary judgment in favor of the employer).

Here, the Court does not discern any evidentiary basis to find that Plaintiff is unable to work a broad class of jobs. Plaintiff's medical restrictions were at best for two months. Thus, the Plaintiff has failed to prove that he has a disability within the meaning of the ADA and the THA. Thus, the Court concludes that Plaintiff's THA claim fails.

### 3. Plaintiff's Negligent Infliction of Emotional Distress Claim

Plaintiff's claim for negligent infliction of emotional distress is barred by the exclusivity provision of Tennessee's Workman's Compensation Act. Suttle v. Dominion Bank of Middle Tennessee; 1993 WL 415691, at *4 (Tenn. Ct. App. 1993) ("if an employee of a…corporation negligently injures an employee…the exclusive remedy of the injured employee is provided by the Workers' Compensation Law"). In any event, a claim of discriminatory conduct alone does not give rise to an infliction of emotional distress claim. Arnett v. Domino's Pizza I, LLC, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003) ("discriminatory conduct does not automatically give rise to the imposition of liability for intentional infliction of emotional distress. If it did, virtually every action brought under these statutes would include an intentional infliction of emotional distress claim."). Moreover, this record does not reveal any facts that Plaintiff suffered an injury sufficient to support a claim of intentional infliction of emotional distress.

In addition, Petitioner's response to the Defendant's motion for summary judgment did not defend Defendant's challenge to his negligent infliction of emotional distress claim. Such an omission constitutes an abandonment of Plaintiff's claim. Perry v. Hoeganaes Corp., 2005 WL 1875090, at *6 (M.D. Tenn. 2005) ("the court finds that the plaintiff has abandoned the…claims listed above by his own failure to defend them in his response brief. Summary judgment will be granted as to these claims").

15

For the above stated reasons, the Court concludes that the Defendant's motion for summary judgment should be granted on the negligent infliction of emotional distress claim. An appropriate Order is filed herewith.

**ENTERED** this the 19th day of December, 2010.

WILLIAM J. HAYNES, Jr.
United States District Judge